**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| MARK DOYLE CONSTRUCTION, LLC, ET AL. | CIVIL ACTION NO. 17-0674 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| TRIHM FOUNDATION, LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is Defendants, First Standard Asurety, LLP ("FSA") and David Harris' ("Harris") (collectively "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2). <u>See</u> Record Document 89. For the reasons that follow, Defendants' Motion to Dismiss (Record Document 89) is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

The present lawsuit was initially filed in a Texas federal district court then subsequently transferred to this Court. Accordingly, it is necessary to discuss the factual and procedural history of both the Texas court and this Court.

### A.    Texas Lawsuit.

Plaintiffs, Mark Doyle Construction, LLC ("MDC") and Woodrow Wilson[1] ("Wilson") (collectively "Plaintiffs" in the Texas lawsuit) filed this lawsuit on March 21, 2016 in the

---

[1] On March 13, 2017, Wilson signed an affidavit that assigned his rights to MDC. Wilson's affidavit states:

> For valuable consideration, I assign and transfer to Mark Doyle Construction, LLC, any and all past, present, or future claims, whether known or unknown, and whether based on tort, contract, or other theory of recovery, that have accrued or that may accrue later, or otherwise be acquired on account of, or in any way grow out of, or that are the subject of the Lawsuit, and (b) any and all judgments and recoveries whatsoever arising from or related to the lawsuit.

United States District Court for the Western District of Texas, San Antonio Division. <u>See</u> Record Document 1. The President of MDC is Mark Doyle ("Doyle").[2] MDC named as Defendants TriHM Foundation, LLC ("TriHM"), Dr. Jackqueline Cooper ("Dr. Cooper"), FSA, and Harris. <u>See id.</u> MDC voluntarily dismissed TriHM and Dr. Cooper from this lawsuit pursuant to Federal Rule of Civil Procedure 41(a)(1)(A) leaving only Defendants, FSA and Harris. <u>See</u> Record Document 20.

Plaintiffs' original Complaint is vague as to the parties involved and their roles in the alleged fraud and conspiracy. However, MDC's amended Complaint is more specific and will be further discussed *infra*. Nonetheless, Plaintiffs' original Complaint alleges that Defendants contacted Plaintiffs, in Louisiana, to solicit investments for a company in Texas. <u>See</u> Record Document 1 at pp. 1-4. Plaintiffs claim that they were fraudulently induced into investing $88,000 in TriHM. <u>See id.</u> at pp. 2-3, ¶ 11. MDC allegedly paid $30,000, $30,000, $3,000, and $3,000 for a total of $66,000. <u>See id.</u> at p. 3, ¶ 11. Wilson allegedly paid $20,000 and $2,000 for a total of $22,000. <u>See id.</u> Defendants allegedly refused to return MDC's $88,000. <u>See id.</u> at ¶ 13. Consequently, Plaintiffs asserted claims for fraud and conspiracy and sought to recover compensatory and punitive damages as well as attorney fees. <u>See id.</u> at pp. 3-4.

---

<u>See</u> Record Document 45. After reviewing this affidavit and the relevant law, the Court determines that this assignment of rights is valid. Therefore, Wilson is no longer a Plaintiff in the present action.

      Two other friends of Mark Doyle, President of MDC, Caldwell Dunn ("Dunn") and Johnny Smith ("Smith") also invested in TriHM and like Wilson signed an affidavit that assigned their rights to MDC. Accordingly, these assignments are likewise valid.

[2] In the present action, Doyle, as the President of MDC, was the decision maker as it relates to the alleged fraud and conspiracy. Therefore, the Court considers Doyle's actions as those of MDC.

Defendants answered Plaintiffs' original Complaint on July 28, 2016. See Record Document 13. In their Answer, Defendants claim that the court lacked personal jurisdiction over them because Plaintiffs' original Complaint did not allege that Defendants committed any acts within the forum state of Texas. See id. at p. 1.

On February 28, 2017, Defendants moved to dismiss MDC's lawsuit for lack of personal jurisdiction. See Record Document 35. In their Motion to Dismiss, Defendants claim that there were no allegations in Plaintiffs' original Complaint that Defendants ever did business in Texas to establish personal jurisdiction. See id. at p. 5. Plaintiffs responded to Defendants' Motion requesting that as an alternative to dismissal, the Court grant it leave to file a motion to transfer venue to the Western District of Louisiana. See Record Document 43 at p. 8. In reply, Defendants stated that, "[w]hile it is up to the Court as to whether or not to transfer this matter to another jurisdiction, it is evident that much of the same arguments against jurisdiction in Texas would be relevant to an argument against jurisdiction in Louisiana." Record Document 48 at p. 9.

On April 26, 2017, Magistrate Judge Bemporad issued a Report and Recommendation. See Record Document 49. Judge Bemporad recommended that instead of granting Defendants' Motion to Dismiss for lack of personal jurisdiction that MDC's alternative request be granted transferring this lawsuit to this Court. See id. District Judge Biery adopted Judge Bemporad's Report and Recommendation on May 22, 2017. See Record Document 51. The case was transferred and assigned to this Court that same day.

### B. Louisiana Lawsuit.

On May 25, 2017, Magistrate Judge Hornsby issued a Memorandum Order requesting MDC[3] file an amended Complaint setting forth each party's domicile and explain in a separate memorandum how the amount in controversy element has been met pursuant to 28 U.S.C § 1332. <u>See</u> Record Document 55. Defendants have raised the issue of this Court's subject matter jurisdiction over the lawsuit so this will be further discussed by the Court *infra*.

On August 10, 2017, MDC filed its amended Complaint that is currently before the Court. <u>See</u> Record Document 65. Again, MDC has asserted claims for fraud and conspiracy and seeks to recover compensatory and punitive damages as well as attorney fees. <u>See id.</u> at pp. 3-4.

MDC in its amended Complaint alleges that in or around November 2013, Defendants accepted the terms of a $400,000 payment from Dr. Cooper in return for helping her obtain investors. <u>See id.</u> at p. 3, ¶ 9. MDC alleges that Harris met with Dr. Cooper in Texas so that they could discuss procuring a T-Listed surety and combine their contacts to obtain assets for investment in TriHM. <u>See id.</u>; Record Document 47-2 at p. 12, Email Exchange.

MDC alleges that on February 6, 2014, at approximately 9:12 p.m., Doyle received a telephone call from Harris. <u>See</u> Record Document 65 at ¶ 10. Harris inquired into whether Doyle would be interested in investing in a mega-million dollar project that one of his clients, Dr. Cooper, was steering. <u>See id.</u> Doyle had no prior relationship with Dr.

---

[3] As noted *supra*, at this point in the litigation, Wilson, an original Plaintiff in this lawsuit assigned his rights to MDC. <u>See</u> Record Document 45. Accordingly, MDC is the only remaining Plaintiff.

Cooper, but was a longtime client of Harris and FSA. See id. During the conversation, Harris explained further that the investment would be in a Texas foundation, which he described as a $5 billion business that would operate throughout the United States and some third world countries. See id. Harris allegedly requested Doyle to consider the investment since it was an investment that potentially provided an extremely high and quick return. See id. Initially, Doyle was skeptical of the opportunity. See id. However, after several minutes, Doyle alleges that Harris convinced him by promising that any money invested in TriHM, Harris would insure with a bond issued by FSA. See id.

Following the phone call, MDC alleges that Harris emailed Dr. Cooper to inform her that he procured a final investor for her project. See id. at ¶ 11. As a *quid pro quo* for obtaining MDC's investment, MDC alleges that Harris requested that Dr. Cooper pay him a fee of $1 million in addition to the $400,000 Dr. Cooper promised him for extending the bond issued by FSA. See id.

Approximately ten minutes after emailing Dr. Cooper, MDC alleges that Harris once again called Doyle, but this time it was a conference call with Dr. Cooper. See id. MDC alleges that Harris again ensured that FSA would bond the $30,000 that MDC had agreed to invest. See id. Moreover, MDC alleges during that call Harris instructed him to send the funds directly to Dr. Cooper in Texas so that she could put the money in a trust account. See id.

MDC alleges that numerous phone calls took place throughout the following weeks with both Harris and Dr. Cooper working to establish and confirm payment. See id.

Furthermore, MDC alleges that documents were issued to the investors [4]that they believed to be valid indemnity bonds listing the investors as beneficiaries and TriHM as FSA's client. See id. Between February and March of 2014, MDC along with Wilson, Dunn, Smith, and Thomas allegedly paid Dr. Cooper a total of $161,130, of which $13,300 was intended for the premiums for the Financial Guarantee Indemnity Bonds issued by FSA. See Record Document 68 at p. 4, ¶ 12; Record Document 47. Doyle alleges that through MDC he invested $80,830. See Record Document 68 at p. 4, ¶ 12.

However, MDC along with the other investors allegedly never received membership certificates, investment certificates, bonds, etc., in, to or by TriHM or any other entity/person. See Record Document 65 at p. 4, ¶ 13. MDC alleges that the documents given to the investors purporting to be Financial Guarantee Indemnity Bonds issued by FSA at or before the time the investors gave Dr. Cooper their investment were fake. See id. at ¶ 13.

The parties' relationship soured when MDC demanded payment on the bonds. See id. MDC alleges that Defendants claimed that since Dr. Cooper never paid for the bonds, they never were in effect. See id. Nonetheless, MDC alleges that Defendants received some portion of funds from Dr. Cooper and TriHM, not only for the bonds, but as consideration of the $1.4 million promised to him as compensation for brining in the investors. See id.

---

[4] The investors include Doyle's friends, Wilson, Dunn, Smith, and a man by the name of Vernon Thomas ("Thomas"), who appears to have no relationship with Doyle or MDC.

**LAW AND ANALYSIS**

## I.     Jurisdiction

MDC's amended Complaint does not invoke federal question jurisdiction under 28 U.S.C. § 1331. The sole basis for jurisdiction is an assertion of diversity jurisdiction pursuant to 28 U.S.C. § 1332, which places the burden on MDC, the party invoking federal jurisdiction, to plead particular facts that establish the requisite amount in controversy and complete diversity of citizenship between itself and Defendants. See St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998).

Although Defendants' Motion is titled "Defendants First Standard Asurety and David Harris' Motion to Dismiss for Lack of *In Personam* Jurisdiction and Brief to Support Motion", Defendants contend that MDC fails to meet the jurisdictional amount in controversy of Section 1332. See Record Document 89. Therefore, it is clear to the Court that Defendants are actually challenging this Court's subject matter jurisdiction pursuant to Rule 12(b)(1).

## II.     Standard of Review

### A.     Federal Rule of Civil Procedure 12(b)(1)

"A challenge to subject matter jurisdiction is non-waivable and may be challenged at any time." Martin ex rel. Martin v. Boh Bros. Constr. Co., Civil Action No. 14-508, 2014 WL 5465838, at *5 (E.D. La. Oct. 28, 2014). Courts may dismiss a lawsuit for lack of subject matter jurisdiction on any one of three different bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming

v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (quoting Barrera–Montenegro v. United States, 74 F.3d 657, 659 (5th Cir.1996)).

Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). A "facial" attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings. See id. at 523. A "factual" attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings—such as testimony and affidavits—may be considered. Id. Because the parties have each submitted evidence outside the pleadings, Defendants' Motion to Dismiss is a "factual" attack, and the Court will consider the evidence in the record, resolving any disputed facts.

## B.    Federal Rule of Civil Procedure 12(b)(2) lack of personal jurisdiction

A motion pursuant to Rule 12(b)(2) allows a party to move to dismiss for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." Luv N'Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006) (citing Wyatt v. Laplan, 686 F.2d 276, 280 (5th Cir. 1982)). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction. See Rd. Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. CCR Fire Prot., LLC, Civil Action No. 16-448-JWD-EWD, 2018 WL 3076743, at *4 (M.D. La. June 21, 2018).

"Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the

facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990) (quoting D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc., 754 F.2d 542, 546 (5th Cir.1985)). Courts may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." Revell v. Lidov, 317 F.3d 467, 469 (5th Cir. 2002) (quoting Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir. 1985)).

## III.    Applicable Law

### A.    Subject matter jurisdiction pursuant to 28 U.S.C. § 1332

A person's domicile rather than residency is what courts must determine for diversity of citizenship purposes. See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 310 (5th Cir. 2002). Furthermore, "[c]itizenship of a LLC is determined by the citizenship of all of its members." Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1080 (5th Cir. 2008). "The citizenship of a limited partnership is based upon the citizenship of each of its partners." Id. at 1079.

To meet the jurisdictional amount, the plaintiff's damages must be greater than $75,000. See 28 U.S.C. § 1332. In other words, to meet the jurisdictional amount the plaintiff's damages must be at least $75,000.01. If the sum claimed by the plaintiff is apparently made in good faith, that sum controls. See St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir.1998). Moreover, "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." Carter v. Westlex Corp., 643 F. App'x 371, 376 (5th Cir. 2016) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290,

58 S. Ct. 586, 591 (1938). Consequently, in order for courts to grant a party's motion to dismiss pursuant to Rule 12(b)(1) for failure to meet the jurisdictional amount in controversy requirement, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." St. Paul Reinsurance Co., 134 F.3d at 1253 (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S. Ct. 586, 590 (1938)). Furthermore, "discretion is vested in the trial court to determine whether the claim meets the jurisdictional amount and the standard–whether expressed in terms of good faith or legal certainty–clearly favors those parties seeking to invoke the jurisdiction of the federal court." Lee v. Kisen, 475 F.2d 1251, 1253 (5th Cir.1973) (internal citation omitted).

## B.    Personal jurisdiction under the Fourteenth Amendment

"A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009). The Louisiana long-arm statute is intended to effectuate "specific jurisdiction over an out-of-state defendant who has not consented to suit in the state of Louisiana." Charles v. First Fin. Ins. Co., 97-1185 (La. Ct. App. 3rd Cir. 3/6/98), 709 So.2d 999, 1001, writ denied, 98-0933 (La. 5/15/98), 719 So.2d 466. "The Louisiana long-arm statute[5] authorizes the

---

[5] La. Rev. Stat. § 13:3201 provides:

> A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
>
> (1) Transacting any business in this state.
>
> (2) Contracting to supply services or things in this state.

exercise of personal jurisdiction to the limits of due process." <u>Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.</u>, 615 F.3d 364, 367 (5th Cir. 2010); <u>see</u> La. Rev. Stat. § 13:3201(b). Therefore, the Court need only consider the second step of the inquiry of whether the exercise of personal jurisdiction over Defendants comports with the Due Process Clause of the Fourteenth Amendment.

Due process is satisfied for personal jurisdiction purposes when: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) the exercise of personal

---

(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.

(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

(5) Having an interest in, using or possessing a real right on immovable property in this state.

(6) Non-support of a child, parent, or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.
(7) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.

(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.

B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.

jurisdiction does not offend "traditional notions of fair play and substantial justice." Id. at 367 (quoting Mink v. AAAA Dev. LLC, 190 F.3d 333, 336 (5th Cir. 1999)).

The "minimum contacts" prong of the two-part test may be further subdivided into contacts that give rise to general personal jurisdiction and specific personal jurisdiction. Choice Healthcare, Inc., 615 F.3d at 368. General jurisdiction is proper when the defendant's contacts within the forum state are not only "substantial", but "continuous and systematic" and unrelated to the pending litigation. See Daimler AG v. Bauman, 571 U.S. 117, 127, 134 S. Ct. 746, 754 (2014). Therefore, general jurisdiction is typically unavailable unless it can be fairly said that the defendant is "at home in the forum state." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 285 (2011).

"When the contacts are less extensive, the court may still exercise specific personal jurisdiction where a 'nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo., 615 F.3d 364, 368 (5th Cir. 2010) (quoting Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 243 (5th Cir. 2008)). "A single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 419 (5th Cir. 1993) (citations omitted). Courts construe a non-resident defendant's actions as "purposefully avail[ing] themselves of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. Id. at 419 (citations omitted). Therefore, "[t]he non-resident[] [defendant's] purposeful

availment must be such that the defendant should reasonably anticipate being haled into court in the forum state." Id. (internal quotation omitted) (citations omitted).

However, "[e]ven if "minimum contacts" exist, the exercise of personal jurisdiction over a non-resident defendant will fail to satisfy due process requirements if the assertion of jurisdiction offends 'traditional notions of fair play and substantial justice.'" Id. at 421 (citations omitted). In determining this fundamental fairness issue, courts examine a number of factors such as:  "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." Id.

## IV. Analysis

The Court will first determine whether it has subject matter jurisdiction over the present lawsuit before determining whether it has personal jurisdiction over Defendants.

### A. Whether the Court has subject matter jurisdiction over the lawsuit.

As noted *supra*, in order for the Court to have subject matter jurisdiction over the present lawsuit there must be complete diversity of citizenship and the amount in controversy must be greater than $75,000. See 28 U.S.C. § 1332.

#### 1. Complete diversity of citizenship

MDC is a limited liability company with two members, Mark and Sharon Doyle, who are both domiciled in Louisiana. See Record Document 65.  Therefore, MDC is a citizen of Louisiana for jurisdiction purposes. See Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1080 (5th Cir. 2008). FSA is a limited liability partnership, and Harris, the sole limited partner of FSA, is domiciled in Georgia. See Record Document 93. Therefore,

FSA and Harris are citizens of Georgia for jurisdiction purposes. See Harvey, 542 F.3d at 1079. Accordingly, complete diversity of citizenship exists between MDC and Defendants.

### 2. Amount in controversy

Defendants first argue that the amounts MDC claims to have paid have varied depending on MDC's filings and is not supported with evidence. See Record Document 89 at p. 11. Next, Defendants argue that MDC cannot aggregate the alleged loss by the various individuals in order to meet the jurisdictional amount. See id. Lastly, Defendants argue that the losses MDC has alleged to have suffered is less than the required amount in controversy. See id.

MDC's amended Complaint alleges that it along with Wilson, Dunn, Smith, and Thomas paid Defendants a total of $161,130 of which $13,300 was intended for the premiums for the Financial Guarantee Indemnity Bonds issued by FSA. See Record Document 65 at p. 4, ¶ 12. MDC's Memorandum in Support of Jurisdiction alleges that it paid $80,830 from its own funds. See Record Document 68 at p. 4, ¶ 12. The Court has no reason to believe that the sum claimed by MDC was made in bad faith. Moreover, Defendants have failed to attach to their Motion to Dismiss evidence that would show bad faith by MDC or showing that to a legal certainty the amount in controversy is not greater than $75,000. See St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir.1998).

Therefore, based on these allegations, the Court finds that MDC has met the jurisdictional amount required. See Lee v. Kisen, 475 F.2d 1251, 1253 (5th Cir.1973) ("[D]iscretion is vested in the trial court to determine whether the claim meets the jurisdictional amount and the standard—whether expressed in terms of good faith or legal

certainty–clearly favors those parties seeking to invoke the jurisdiction of the federal court."). In other words, the Court finds that it does not appear to a legal certainty that MDC's claim is less than the required jurisdictional amount.

Even MDC's original Complaint meets the jurisdictional amount. MDC's original Complaint alleges it paid Defendants $66,000. $66,000 coupled with a punitive damages award for fraud would likely exceed the required jurisdictional amount. See St. Paul Reinsurance Co., 134 F.3d at 1253 n. 7 (quoting Allstate Ins. Co. v. Hilbun, 692 F. Supp. 698, 701 (S.D. Miss. 1988)) ("Punitive damages can be included to reach the amount in controversy requirement if, under the governing law of the suit, they are recoverable.").

Defendants' argument that the amounts MDC claims to have paid have varied depending on MDC's filings and is not supported with evidence holds no merit. As noted *supra*, "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." Carter v. Westlex Corp., 643 F. App'x 371, 376 (5th Cir. 2016) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290, 58 S. Ct. 586, 591 (1938). For these same reasons, Defendants' argument that because previous Defendants, Dr. Cooper and TriHM, were dismissed from the lawsuit and the amount recoverable against the present Defendants is allegedly only $13,300 holds no merit. Moreover, Defendants' Memorandum in Support of its Motion to Dismiss also lacks any evidence or case law to support its arguments.

Consequently, at this stage in the litigation, the Court rejects Defendants' claim that MDC has failed to meet the amount in controversy element of 28 U.S.C. § 1332. Accordingly, Defendants' Rule 12(b)(1) Motion is **DENIED**.

Because the Court determined that MDC itself meets the jurisdictional amount in controversy, it is unnecessary for the Court to determine whether the parties, who assigned their rights to MDC, claims can be aggregated to meet the jurisdictional amount in controversy.

**B.    Whether the Court has general personal jurisdiction over Defendants.**

In the present action, MDC argues that this Court has general personal jurisdiction over Defendants. To support this position, MDC argues that since March 28, 2012, FSA has been registered with the Louisiana Secretary of State as a non-Louisiana (Georgia) partnership doing business in Louisiana. See Record Document 101-1, Secretary of State Website, Exhibit A. However, without more, the appointment of an agent for service of process and the registration to do business within the state, does not satisfy the criteria to exercise general jurisdiction. See Wenche Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 182 (5th Cir.1992) (There is no case law within the Fifth Circuit that supports the proposition that the appointment of an agent for process and the registration to do business within the state, without more, suffices to satisfy the criteria for the exercise of general jurisdiction.). MDC also argues that FSA has been previously sued in Louisiana state court to support general personal jurisdiction. See Record Document 101 at p. 2. Finally, evidence in the record reveals that since June 3, 2014, FSA was an individual surety to MDC, a Louisiana citizen. See Record Document 47-12, Letter, Exhibit 11.

Nonetheless, the Court is not persuaded by MDC's arguments in support of general personal jurisdiction. The evidence offered by MDC does not amount to Defendants' contacts within the forum state that are not only "substantial", but "continuous and systematic" and unrelated to the pending litigation. See Daimler AG v. Bauman, 571

U.S. 117, 127, 134 S. Ct. 746, 754 (2014). Therefore, the Court is not persuaded that Defendants are "at home" in Louisiana based on the evidence offered by MDC. <u>See</u> <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919, 131 S. Ct. 2846, 285 (2011). Accordingly, the Court rejects MDC's claim that this Court has general personal jurisdiction over Defendants.

### C. Whether the Court has specific personal jurisdiction over FSA.

The Court will first determine whether MDC has established that Defendants had "minimum contacts" with Louisiana to meet the first prong of a specific personal jurisdiction analysis. If the Court determines that Defendants had sufficient "minimum contacts," the Court will analyze whether exercising specific personal jurisdiction over Defendants would offend the "traditional notions of fair play and substantial justice."

### 1. Minimum Contacts

Defendants argue that there was not sufficient contact with Louisiana for the Court to exercise specific personal jurisdiction. <u>See</u> Record Document 89. However, MDC's amended Complaint and Doyle's affidavit rebut this contention. <u>See</u> Record Document 65; Record Document 101-2, Affidavit of Mark Doyle, Exhibit B. Furthermore, Defendants have failed to offer evidence or case law to support its position that this Court lacks specific personal jurisdiction.

On February 6, 2014, Harris telephoned Doyle in Louisiana to pitch a mega-million-dollar project in which investors were being sought to fund a Texas foundation that would operate throughout the United States and some third world countries. <u>See</u> Record Document 101-2 at p. 2, ¶¶ 4-5, Exhibit B. Harris assured Doyle that any investments would be insured with a bond issued by FSA. <u>See id.</u> at ¶ 6. Other telephone calls and e-

mails by Harris and FSA to Doyle in Louisiana followed. <u>See id.</u> at p. 3, ¶ 9. However, Harris in his affidavit contends that no follow up calls or emails ever took place. <u>See</u> Record Document 89-1 at p. 2, ¶¶ 9-10, Affidavit of David Harris. Nonetheless, "conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." <u>Bullion v. Gillespie</u>, 895 F.2d 213, 217 (5th Cir. 1990) (quoting <u>D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.</u>, 754 F.2d 542, 546 (5th Cir.1985)). Therefore, the Court credits this part of Doyle's affidavit rather than Harris'.

MDC bears the initial burden of proving that this Court has specific personal jurisdiction over Defendants. <u>See</u> <u>Luv N'Care, Ltd. v. Insta-Mix, Inc.</u>, 438 F.3d 465, 469 (5th Cir. 2006). In the present action, the allegations of multiple phone calls and emails to MDC, a Louisiana citizen, soliciting MDC's investment by Harris and FSA is sufficient for the Court to find that the "minimum contacts" prong is met. <u>See</u> <u>Ruston Gas Turbines, Inc. v. Donaldson Co.</u>, 9 F.3d 415, 419 (5th Cir. 1993) ("A single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."). Furthermore, the allegation that as a *quid pro quo* for obtaining MDC's investment, Harris requested that Dr. Cooper pay him a fee of $1 million in addition to the $400,000.00 Dr. Cooper promised him for extending the bond issued by FSA only strengthens the Court's finding. <u>See id.</u> This allegation, taken as true, shows that Defendants were intrinsically involved in the funding of TriHM by soliciting Louisiana investors.

Moreover, Defendants should have been aware and likely were aware that delivery of a bond to a Louisiana resident could result in litigation over that bond in a Louisiana

court, even if that bond was never delivered. Thus, Defendants should have reasonably anticipated being haled into court in Louisiana. <u>See</u> <u>Ruston Gas</u>, 9 F.3d at 419 ("The non-resident[] [defendant's] purposeful availment must be such that the defendant should reasonably anticipate being haled into court in the forum state."). Accordingly, based on the factual allegations in MDC's amended Complaint and Doyle's affidavit, the Court holds that MDC has met the "minimal contacts" prong of a specific personal jurisdiction analysis.

### 2. Traditional notions of fair play and substantial justice

As noted *supra*, in determining this fundamental fairness issue, courts examine a number of factors such as: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." <u>Ruston Gas Turbines, Inc. v. Donaldson Co.</u>, 9 F.3d 415, 421 (5th Cir. 1993). Accordingly, the Court will examine the relevant factors.

### i. Defendants' burden

"[O]nce minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." <u>Wright v. Davis</u>, Civil Action No. 308CV97 DPJ-JCS, 2008 WL 4999165, at *3 (S.D. Miss. Nov. 19, 2008) (quoting <u>Wien Air Alaska, Inc. v. Brandt</u>, 195 F.3d 208, 215 (5th Cir.1999)). Georgia and Louisiana are not neighboring states and the distance between them is significant. However, the Court rejects any contention by Defendants that it would be unduly burdensome for Defendants to appear before this Court. It should also be noted that Defendants have failed to show how defending this lawsuit in Louisiana would be unduly burdensome. Accordingly, the Court finds that the burden on Defendants to be minimal.

### ii.     Louisiana's interest

MDC, a Louisiana citizen, as well as other Louisiana citizens have been allegedly wronged by the actions of Defendants. Accordingly, this Court has an interest in adjudicating the matter and providing a forum for the redress of injuries to its citizens.

### iii.     MDC's interest in convenient and effective relief

MDC's office is in Bossier City, Louisiana and Doyle resides in Bossier City. This Court encompasses Bossier City. Moreover, a significant number of likely witnesses to the present action reside in Louisiana though Dr. Cooper resides in Texas and Harris resides in Georgia. Therefore, substantially all the witnesses reside in Louisiana. Accordingly, MDC's interest in convenient and effective relief is high.

### iv.     Judicial system's interest in efficient resolution of controversies

This case was transferred from a Texas federal district court to the present one. Accordingly, the interstate judicial system's interest in promoting the most efficient resolution of the controversy is best served by adjudication of MDC's claims in the current forum where it has been pending since August 10, 2017.

### v.     Louisiana's shared interest in furthering fundamental social policies

There is nothing before the Court which suggests that the fifth factor, the shared interest of the several states in furthering fundamental substantive social policies, has any application in the present case.

Based on the Court's analysis of the aforementioned factors, the Court's exercise of specific personal jurisdiction over Defendants will not offend the "traditional notions of fair play and substantial justice."

Therefore, MDC has met its burden of establishing a *prima facie* case of specific personal jurisdiction, i.e., MDC has establish sufficient "minimum contacts" of Defendants with Louisiana and exercising jurisdiction over Defendants will not offend the "traditional notions of fair play and substantial justice." Accordingly, Defendants' Motion to Dismiss pursuant to Rule 12(b)(2) is **DENIED**.

## CONCLUSION

Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2) is **DENIED**. The Court finds that MDC has met the jurisdictional amount required in 28 U.S.C. § 1332. Furthermore, it is appropriate for the Court to exercise specific personal jurisdiction over Defendants.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 8th day of August, 2018.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT